IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

S. GREGORY HAYS
Receiver for Lighthouse Financial
Partners, LLC,

    Plaintiff,

      v.

PAGE PERRY, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3925-TWT

## OPINION AND ORDER

This is a legal malpractice case arising out of services provided by the
Defendants to Lighthouse Financial Partners, LLC. The Plaintiff, Lighthouse's
Receiver, argues that the Defendants were aware that Lighthouse was not complying
with applicable regulations; and that they were legally obligated to violate their duty
of confidentiality and inform the regulatory authorities of the non-compliance. The
Plaintiff argues that failure to do this allowed Benjamin DeHaan to continue stealing
from Lighthouse's clients. The case is before the Court on the Defendants Page Perry,
LLC, J. Steven Parker, and Robert D. Terry's Motion to Dismiss [Doc. 11] and the
Defendants Daniel I. MacIntyre, Alan R. Perry, Jr., and the Estate of J. Boyd Page's

Motion to Dismiss [Doc. 12]. For the reasons set forth below, the Motions to Dismiss are both GRANTED.

## I. Background

On February 1, 2013, Benjamin DeHaan – the former manager and majority owner of Lighthouse Financial Partners, LLC – pled guilty to one count of wire fraud.[1] Lighthouse was in the business of providing investment advisory services to its clients, including investment of client funds. For years, DeHaan misappropriated funds from Lighthouse's clients.[2] To accomplish this, he made several misrepresentations to federal and state regulatory authorities. To avoid stringent regulations, Lighthouse would report that it was not taking custody of its clients' funds.[3] Lighthouse stated that the funds were immediately being transferred to qualified broker-dealers that served as custodians.[4] Two specific broker-dealers were listed: Interactive Brokers  and TD Ameritrade.[5] However, Lighthouse *was* taking

---

[1]      Compl. ¶ 28.

[2]      Compl. ¶ 17.

[3]      Compl. ¶ 16.

[4]      Compl. ¶ 16.

[5]      Compl. ¶ 16.

custody of its clients' funds.[6] Lighthouse – at DeHaan's direction – opened a bank account called the "Client Holding – Pass Through" Account ("Pass Through Account").[7] Lighthouse represented that the Pass Through Account operated merely as a conduit between Lighthouse clients and the broker-dealers.[8] However, the funds placed in this Pass Through Account were being misappropriated by DeHaan for his personal use.[9]

From 2008 until 2012, the Defendant Page Perry, LLC represented Lighthouse.[10] Pursuant to a retainer agreement, Page Perry agreed to "advise [Lighthouse] regarding all registration, licensing, and regulatory requirements, including, as applicable, the requirements of the Securities and Exchange Commission and all state securities and investment advisor regulators."[11] The agreement made clear that Page Perry's responsibilities did not include "[c]ompliance matters, except as expressly identified."[12] In July of 2010, J. Steven Parker – a partner at Page Perry –

---

[6]     Compl. ¶ 17.

[7]     Compl. ¶ 18.

[8]     Compl. ¶ 41.

[9]     Compl. ¶ 17.

[10]    Compl. ¶ 32.

[11]    Compl. ¶ 36.

[12]    Compl., Ex. 2.

performed a mock audit of Lighthouse, which included a review of Lighthouse's records and financial statements.[13] The 2010 financial statements referenced the Pass Through Account.[14] Parker sent DeHaan an e-mail, which read: "I re-checked the Georgia custody rule. You can receive checks made payable to 'third parties,' but not checks made payable to you. If you receive checks payable to Lighthouse, you still do not have custody if you return them within 3 business days. *You should return the check ASAP and get a replacement payable to [Interactive Brokers]*."[15]

Another mock audit took place in August of 2011.[16] To assist, Parker hired Em Walker, a former staff attorney for the Georgia Securities Commission.[17] When Walker visited the Lighthouse office on September 1, 2011, DeHaan was unable to produce most of the documents that he had been asked for in advance, including bank statements and client account statements.[18] Walker recommended that Page Perry investigate whether Lighthouse's clients were receiving periodic statements from the

---

[13]     Compl. ¶¶ 43-45.

[14]     Compl. ¶ 46.

[15]     Compl., Ex. 10 (emphasis added).

[16]     Compl. ¶ 53.

[17]     Compl. ¶ 53.

[18]     Compl. ¶ 55.

custodians Interactive Brokers and TD Ameritrade.[19] Parker wrote to Interactive Brokers and asked for assurances that Interactive Brokers was sending quarterly account statements to Lighthouse's clients.[20] On October 4, 2011, Parker met with DeHaan and informed DeHaan that Lighthouse was not in compliance with custody requirements because Interactive Brokers had not been providing account statements to Lighthouse's clients.[21] On November 18, 2011, Page Perry issued its mock audit report which stated that "[c]lient transaction records were not available at time of audit."[22]

On December 14, 2011, Lighthouse received notice that the Georgia Securities Commissioner planned to audit Lighthouse's records. The Commissioner's office asked to see the client account statements from Interactive Brokers or TD Ameritrade. On February 23, 2012, Lighthouse asked Parker for assistance. Parker drafted an e-mail that Lighthouse sent to the auditor. This e-mail indicated that "DeHaan had been unable to obtain the client statements because TD Ameritrade had provided

---

[19]      Compl. ¶ 58.

[20]      Compl. ¶ 60.

[21]      Compl. ¶ 61.

[22]      Compl. ¶ 63.

Lighthouse with the wrong phone numbers."[23] Additionally, Parker instructed DeHaan to close the Pass Through Account and have it audited by April of 2012.[24] Then, on March 30, 2012, the SEC issued a subpoena to DeHaan. DeHaan appeared before the SEC on April 3, 2012, and he was represented by two Page Perry partners, the Defendants Robert D. Terry and Daniel I. MacIntyre. On June 14, 2012, Page Perry withdrew as counsel for Lighthouse.[25] With DeHaan's consent, Page Perry then reported his criminal activity to the SEC.[26]

The SEC filed a civil enforcement action against Lighthouse and DeHaan.[27] Lighthouse's assets were frozen, and the Plaintiff S. Gregory Hays was appointed as Receiver for Lighthouse. The Plaintiff filed this lawsuit, arguing that the Defendants knew, or should have known, that Lighthouse had custody of its clients' funds and that this posed a risk of theft. The Plaintiff further argues that the Defendants should have notified regulatory authorities of Lighthouse's non-compliance with applicable rules, and that such notification could have mitigated the ensuing damage. The Plaintiff

---

[23]     Compl. ¶ 80.

[24]     Compl., Ex. 29.

[25]     Compl. ¶ 93.

[26]     Compl. ¶ 94.

[27]     Compl. ¶ 27.

asserts claims for professional malpractice, breach of fiduciary duty, and breach of contract.[28] The Defendants move to dismiss.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[29] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[30] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[31] Generally, notice pleading is all that is required for a valid

---

[28]    The Plaintiff seeks to hold Alan R. Perry, Jr. and the Estate of J. Boyd Page liable on a theory of supervisory liability.

[29]    Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[30]    Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[31]    See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

complaint.[32] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[33]

"[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."[34] However, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."[35]

### III. Discussion

### A. Professional Malpractice

The Plaintiff claims that the Defendants' professional malpractice proximately caused the harm that Lighthouse suffered from DeHaan's theft of client funds. The Plaintiff's response to the Motion to Dismiss begins with a blatant misstatement of the

---

[32]    See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985).

[33]    See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

[34]    Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1368 (11th Cir. 1997).

[35]    Id. at 1369.

law: that in ruling on a motion to dismiss, this Court is bound by O.C.G.A. § 9-11-9.1. No authority for this preposterous statement is given. Of course, federal law determines the pleading standard in ruling on a motion to dismiss in federal court. To establish a legal malpractice claim, "the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff."[36] "[T]he element of breach of duty in a legal malpractice case - the failure to exercise ordinary care, skill, and diligence - must relate directly to the duty of the attorney, that is, the duty to perform *the task for which he was employed."*[37] Additionally, "whether and to what extent the defendant owed the plaintiff a duty of care . . . are questions of law."[38]

The Plaintiff asserts that the Defendants breached a duty to Lighthouse in at least three ways. First, the Plaintiff argues that the Defendants knew that Lighthouse likely had custody of client funds and that they failed to notify regulatory authorities. If the Defendants had done so, the argument goes, then DeHaan's scheme would have been stymied earlier on. In response, the Defendants argue that it is immaterial

---

[36]    Fortson v. Hotard, 299 Ga. App. 800, 802 (2009) (internal quotation marks omitted).

[37]    Tante v. Herring, 264 Ga. 694, 695 (1994) (emphasis added).

[38]    City of Douglas v. Hudson, 315 Ga. App. 20, 22 (2012).

whether they knew that Lighthouse likely had custody of client funds. The Defendants argue that they were hired to perform an *advisory* role, and although they had a duty to perform *that role* with sufficient care and diligence, there was no independent duty to report regulatory non-compliance to a government agency. The Court agrees. The Plaintiff cites to no Georgia statute or state court case imposing such a duty on attorneys. Instead, the Plaintiff cites to Rule 1.13(b) of the Georgia Rules of Professional Conduct ("GRPC"), which states in relevant part:

> If a lawyer for an organization knows that an officer . . . associated with the organization is engaged in action . . . related to the representation that is . . . a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to *higher authority* in the organization, including, if warranted by the circumstances, to *the highest authority that can act on behalf of the organization* as determined by applicable law.[39]

To begin, the Georgia Supreme Court has made clear that the GRPC rules do not independently constitute legal duties which give rise to malpractice claims.[40]

---

[39]     Rule 1.13 Organization As Client, GEORGIA RULES OF PROFESSIONAL CONDUCT (Jan. 1, 2001), http://www.gabar.org/barrules/handbookdetail.cfm?what=rule&id=97 (emphasis added).

[40]     See Davis v. Findley, 262 Ga. 612, 613 (1992) ("[W]hile the Code of Professional Responsibility provides specific sanctions for the professional

Regardless, the exhibits attached to the Complaint show that the Defendants complied with this rule.[41] The Defendants informed DeHaan – who, at the time, was the highest authority at Lighthouse – on at least three separate occasions that Lighthouse might not be in compliance with custody regulations. After the initial audit, Parker sent DeHaan an e-mail instructing him to return checks made payable to Lighthouse. After the second audit, Parker met with DeHaan and informed DeHaan that Lighthouse was non-compliant because Interactive Brokers was not providing account statements to the clients. Even more, once the Georgia Securities Commissioner began an investigation, Parker instructed DeHaan that he ought to have the Pass Through Account audited to ensure compliance. Even the Plaintiff acknowledges that the Defendants advised DeHaan against maintaining custody of client funds.[42]

---

misconduct of the attorneys whom it regulates, it does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof."); <u>Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.</u>, 265 Ga. 374 (1995) ("[W]e have held that an alleged violation of the Code of Professional Responsibility . . . or the Standards of Conduct . . . 'standing alone, cannot serve as a legal basis' for a legal malpractice action.").

[41]   Although the Plaintiff alleges otherwise in his Complaint, the attached exhibits expressly contradict these allegations. And "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1206 (11th Cir. 2007).

[42]   <u>See, e.g.</u>, Pl.'s Br. in Resp. to Page Perry, Parker, and Terry's Motion to Dismiss, at 33 ("DeHaan repeatedly told [the Defendants] that he was not complying with *their advice* and he gave them the financial statements that plainly showed that he had *custody of client funds*.").

The Plaintiff tries to argue that the "highest authority" was the SEC or the Georgia Securities Commissioner. The Plaintiff cites no authority for this argument and it is entirely without merit. Rule 1.13 clearly states that "the lawyer shall refer the matter to higher authority *in the organization*, including . . . to the highest authority that can act on behalf of the organization." That the Receiver may now act on behalf of Lighthouse is immaterial. The Receiver did not have such authority when there was an attorney-client relationship between the Defendants and Lighthouse. GRPC Rule 1.13(c) makes clear that, in this circumstance, disclosure to an external agency is permissive but not mandatory: "if . . . the highest authority that can act on behalf of the organization . . . fails to address . . . an action . . . that is clearly a violation of law, and . . . the lawyer reasonably believes that the violation is reasonably certain to result in substantial injury to the organization, then the lawyer *may* reveal information relating to the representation . . .."[43] Thus, no legal duty was breached by the Defendants' failure to notify a regulatory authority of Lighthouse's non-compliance with custody rules.[44]

---

[43]     Rule 1.13 Organization As Client, GEORGIA RULES OF PROFESSIONAL CONDUCT (Jan. 1, 2001), http://www.gabar.org/barrules/handbookdetail.cfm?what=rule&id=97 (emphasis added).

[44]     The Plaintiff also cites to an affidavit by Mercer E. Bullard in support. Pl.'s Br. in Resp. to Page Perry, Parker, and Terry's Motion to Dismiss, at 42. But "the

The Bullard Affidavit relies upon a non-existent duty and can be entirely disregarded. The Plaintiff's central claim that Defendants were affirmatively required to reveal regulatory non-compliance to the government agencies regulating Lighthouse is unsupported by any legal authority. Significantly, in his response to the Motion to Dismiss, the Plaintiff fails to identify a single case or statute even intimating that Georgia lawyers have a duty to blow the whistle on their clients to regulators. In fact, Georgia law – preferring a policy that encourages the confidentiality of information obtained during the attorney-client relationship – never obligates a lawyer to report even the most serious client misconduct to regulators. A lawyer is not even permitted to report his client except in the most limited circumstances – circumstances Page Perry never faced during its representation of Lighthouse until the very end when the lawyers persuaded DeHaan to allow them to report his theft of client funds to the SEC.

The Plaintiff's theory – that Page Perry had to inform on Lighthouse of suspected or known regulatory violations – would put every corporate lawyer in a position of policing his client and turning it in to authorities despite the Bar Rules under which the attorney-client privilege is held sacrosanct. No rational client would

---

existence of a legal duty is a question of law, [and] an expert affidavit does not, and cannot, create a legal duty where none existed before." Diamond v. Department of Transp., 756 S.E.2d 277, 282 (Ga. Ct. App. 2014) (internal quotation marks omitted).

seek compliance advice from a lawyer, knowing the lawyer would be obligated to report the client to regulators if the lawyer detected less than complete compliance with every relevant regulation. The Plaintiff's theory would convert private corporate lawyers representing financial advisers and other regulated industry participants into unwilling government auditors required to utilize information gained in the course of their representation to the potential detriment of their clients, all in the name of protecting the corporate client from itself. The concept is inherently objectionable and would actually require such corporate lawyers to routinely violate Bar Rules 1.6 and 1.13. The theory completely disregards the safeguards imposed in these Rules to render extraordinarily limited the circumstances in which a lawyer may be permitted, but not required, to bring a matter to the attention of regulatory authorities. It also disregards the clear guidance, in the extensive comments to Rule 1.13, precluding referral of even the most serious matters to any authority other than the board of directors. Under the Plaintiff's theory, the confidentiality of lawyer-client communications would no longer be held sacred because a lawyer's self-preservation interest would raise merely permissive reporting to mandatory reporting of a client to authorities outside of the organization itself. The Plaintiff provides no authority whatsoever for such a radical reversal of a lawyer's duty to a client. Outside corporate

attorneys – with or without knowledge of suspicious activity – are not insurers of good behavior by the client.

Disregarding the wild exaggerations, implausible inferences and selective quotations from e-mails, the Plaintiff fails to allege facts showing a single instance in which the Page Perry lawyers gave Lighthouse bad advice. The Plaintiff argues that the Defendants breached their duty of care by performing deficient mock audits. But even assuming this to be true, the Complaint does not state a causal link between this alleged breach and Lighthouse's subsequent damages. To the contrary, the Complaint makes clear that Lighthouse's compliance issues were not caused by inadequate legal advice, but by DeHaan's decision to flout applicable regulations to further his fraudulent scheme, and then lie to his clients and his lawyers. In fact, as explained above, the Defendants *did* notify DeHaan of the potential non-compliance and DeHaan ignored their advice. The Complaint fails to indicate how a more adequate mock audit, by itself, would have prevented DeHaan's criminal conduct. Consequently, the Plaintiff would not be entitled to recovery for this alleged breach.[45]

---

[45]    See Crowley v. Trust Co. Bank of Middle Georgia, N.A., 219 Ga. App. 531, 532 (1995) ("A client may recover for legal malpractice only if the negligence of the attorney is the proximate cause of damages to the client . . . [a]nd if it is shown, without dispute, that a client could have avoided damages resulting from an attorney's mistake but did not do so, recovery for legal malpractice (as with any other tort) is limited to those losses the client would have suffered had damages been properly mitigated.").

Finally, the Plaintiff argues that the Defendants breached their duty of care to Lighthouse by representing DeHaan before the SEC even though his interests were adverse to those of Lighthouse. But again, there is no causal link between this alleged breach and the damages that Lighthouse suffered. The Complaint does not explain, with any specificity, how the Defendants' representation of DeHaan before the SEC allowed for DeHaan's misappropriation.[46] Indeed, DeHaan's misappropriation took place *prior* to the SEC hearing, and the Complaint makes clear that shortly after the hearing the Defendants reported DeHaan's criminal activity to the SEC.[47] Accordingly, because the Plaintiff has failed to sufficiently allege that the Defendants breached a legal duty which proximately caused Lighthouse's damages, the professional malpractice claim should be dismissed.[48]

### B. Breach of Fiduciary Duty and Breach of Contract

---

[46]    Cf. De La Maria v. Powell, Goldstein, Frazer & Murphy, 612 F. Supp. 1507, 1518-19 (N.D. Ga. 1985) ("With the exception of . . . two allegations, the plaintiff has failed to demonstrate how Mr. Gornall's alleged conflict of interest manifested itself to the detriment of . . . the plaintiff.").

[47]    Compl. ¶¶ 87, 94.

[48]    The Court notes that in his Response brief, the Plaintiff focuses far too much on what the Defendants might have known, and far too little on what they had a legal obligation to do. In moving to dismiss, the Defendants are arguing that even assuming they were aware that Lighthouse was not in compliance with custody regulations, they were under no duty to do any more than they did.

The Plaintiff's remaining claims are duplicative of the professional malpractice claim. Georgia courts routinely dismiss fiduciary duty and contract claims when they rely on the same allegations and implausible inferences as in the legal malpractice claim.[49] Here, the Plaintiff's fiduciary duty and contract claims are also based on the allegation that the Defendants did not meet relevant professional standards in executing their duties.[50] Furthermore, the reasons for dismissing the professional malpractice claim apply equally to the fiduciary duty claim: the Plaintiff cites to no

---

[49]    See Oehlerich v. Llewellyn, 285 Ga. App. 738, 740-41 (2007) ("[T]he trial court stated that the breach of contract and breach of fiduciary duty claims are based on the allegations that defendants failed to investigate fully the claims and failed to advise plaintiff properly. As such, 'these allegations clearly call into question the degree of professional skill exercised,' and therefore are duplications of the legal malpractice claim. We agree."); Griffin v. Fowler, 260 Ga. App. 443, 446 (2003) ("Griffin's breach of fiduciary duty claim is a mere duplication of the malpractice claim and cannot be maintained."); McMann v. Mockler, 233 Ga. App. 279, 281 (1998) ("The court ruled that the claims were 'mere duplications of the legal malpractice claim which itself is based on the establishment of a fiduciary, attorney-client relationship that is breached.'"); Anderson v. Jones, 323 Ga. App. 311, 318 (2013) ("[T]he [fiduciary duty] claim duplicated her legal malpractice claim: the duties arose from the same source (that is, the attorney-client relationship), were allegedly breached by the same conduct, and allegedly caused the same damages.").

[50]    See Compl. ¶ 125 ("Page Perry and the individual Defendants breached their fiduciary duty to Lighthouse by treating DeHaan as their client and putting his interest above that of Lighthouse . . . and facilitating and participating in his fraud against Lighthouse, *as fully set forth above*."); Compl. ¶ 133 ("Page Perry breached the Retainer Agreement by failing to *properly* advise Lighthouse . . . failing to address the material regulatory deficiencies it discovered or should have discovered . . . and failing to act in Lighthouse's best interest with respect to known regulatory violations.").

case  indicating that an attorney has a fiduciary duty to report regulatory non-compliance to a government agency. And no part of the retainer agreement expressly required the Defendants to perform such a task. Accordingly, the Plaintiff's breach of fiduciary duty and breach of contract claims must also be dismissed.

### C. Page, Perry, and MacIntyre

The Plaintiff also asserts his professional malpractice, fiduciary duty, and contract claims against the Estate of J. Boyd Page and Perry individually. To begin, there is no allegation that Page or Perry ever performed any direct services for Lighthouse. Perhaps recognizing this, the Plaintiff relies on theories of vicarious liability. He argues that Page and Perry are liable for the alleged malpractice of other attorneys at the law firm. But the Plaintiff acknowledges that Page Perry was a limited liability company, and Georgia law makes clear that "[a] person who is a member, manager, agent, or employee of a limited liability company is *not* liable, solely by reason of being a member, manager, agent, or employee of the limited liability company . . . for the acts or omissions of any other member . . . of the limited liability company, whether arising in contract, tort, or otherwise."[51] The Plaintiff then tries to assert an independent negligent supervision claim against both Page and Perry. In Novare Group, Inc. v. Sarif, the Georgia Supreme Court indicated that, in order to

---

[51]     O.C.G.A. § 14-11-303.

establish a negligent supervision claim, a plaintiff must show that "the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."[52] Here, the Plaintiff does not assert that the attorneys who committed the alleged malpractice had a tendency to engage in such behavior, nor does he allege that Page or Perry were aware (or should have been aware) of this tendency. In fact, other than alleging that Page and Perry were "supervisors," the Plaintiff includes no supporting factual matter at all.

In response, the Plaintiff first argues that Page and Perry are directly liable because they collaborated with the other attorneys at the firm in deciding how to counsel Lighthouse once the state investigation took place. He also argues that Page and Perry must have discussed Lighthouse at meetings within the law firm, and must have had input in the decision to represent DeHaan before the SEC. These allegations are not stated in the Complaint. And contrary to the Plaintiff's assertion, these are not reasonable inferences. There is no basis for assuming that Page and Perry played a material role in the services provided to every client of the firm.

Second, the Plaintiff appears to jettison his negligent supervision claim, and substitute it with a standard negligence claim based upon the "voluntary undertaking"

---

[52]     <u>Novare Grp., Inc. v. Sarif</u>, 290 Ga. 186, 190-91 (2011).

rule: "when one undertakes an act which he has no duty to perform and another reasonably relies upon that undertaking, the act must generally be performed with reasonable care."[53] The Plaintiff argues that once Page and Perry chose to supervise the other attorneys, they had to perform that task with reasonable care. This argument fails. The Complaint makes no plausible allegation that Page or Perry actually supervised any of the work done for Lighthouse. Additionally, <u>Novare</u> forecloses this claim as well. As stated, in that case, the Georgia Supreme Court made clear that employer supervision may be negligent only if the employer "reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred." There is simply no basis for including Page or Perry in this lawsuit.

Finally, the Plaintiff also asserts malpractice, fiduciary duty, and contract claims against MacIntyre based on his representation of DeHaan before the SEC. However, as explained above, there is no causal link between this representation and any of the damages that Lighthouse suffered. There is also no indication of what MacIntyre specifically advised DeHaan to do, or how it affected Lighthouse in any way. Accordingly, the Plaintiff's claims against the Estate of J. Boyd Page, Perry, and MacIntyre should be dismissed.

---

[53]     <u>Mixon v. Georgia Cent. Ry., L.P.</u>, 266 Ga. App. 365, 367 (2004).

## IV. Conclusion

For these reasons, the Court GRANTS the Defendants Page Perry, LLC, J. Steven Parker, and Robert D. Terry's Motion to Dismiss [Doc. 11] and GRANTS the Defendants Daniel I. MacIntyre, Alan R. Perry, Jr., and the Estate of J. Boyd Page's Motion to Dismiss [Doc. 12].

SO ORDERED, this 10 day of June, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge