IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

S. GREGORY HAYS
Receiver for Lighthouse Financial
Partners, LLC,

    Plaintiff,

      v.

PAGE PERRY, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3925-TWT

## OPINION AND ORDER

This is a legal malpractice case arising out of services provided by the Defendants to Lighthouse Financial Partners, LLC. The Receiver claims that Page Perry lawyers committed legal malpractice by not informing regulatory authorities of regulatory violations by their client. The Court granted the Defendants' Motion to Dismiss based upon the total absence of any authority to support such a strange perversion of lawyers' professional responsibilities to their clients: to maintain in confidence all information gained in the professional relationship. It is now before the Court on the Plaintiff's Motion for Reconsideration [Doc. 30]. For the reasons set forth below, the Plaintiff's Motion for Reconsideration [Doc. 30] is DENIED.

T:\ORDERS\13\Hays\reconsiderationtwt.wpd

# I. Background

On February 1, 2013, Benjamin DeHaan – the former manager and majority owner of Lighthouse Financial Partners, LLC – pled guilty to one count of wire fraud.[1] Lighthouse was in the business of providing investment services to its clients, including investment of client funds. For years, DeHaan misappropriated funds from Lighthouse's clients.[2] To accomplish this, he made several misrepresentations to federal and state regulatory authorities. To avoid stringent regulations, Lighthouse would report that it was not taking custody of its clients' funds.[3] Lighthouse stated that the funds were immediately being transferred to qualified broker-dealers that served as custodians.[4] Two specific broker-dealers were listed: Interactive Brokers and TD Ameritrade.[5] However, Lighthouse *was* taking custody of its clients' funds.[6] Lighthouse – at DeHaan's direction – opened a bank account called the "Client Holding – Pass Through" Account ("Pass Through Account").[7] Lighthouse

---

[1]     Compl. ¶ 28.

[2]     Compl. ¶ 17.

[3]     Compl. ¶ 16.

[4]     Compl. ¶ 16.

[5]     Compl. ¶ 16.

[6]     Compl. ¶ 17.

[7]     Compl. ¶ 18.

represented that the Pass Through Account operated merely as a conduit between Lighthouse clients and the broker-dealers.[8] However, the funds placed in this Pass Through Account were being stolen by DeHaan for his personal use.[9]

From 2008 until 2012, the Defendant Page Perry, LLC represented Lighthouse.[10] Pursuant to a retainer agreement, Page Perry agreed to "advise [Lighthouse] regarding all registration, licensing, and regulatory requirements, including, as applicable, the requirements of the Securities and Exchange Commission and all state securities and investment advisor regulators."[11] The agreement made clear that Page Perry's responsibilities did not include "[c]ompliance matters, except as expressly identified."[12] In July of 2010, J. Steven Parker – a partner at Page Perry – performed a mock audit of Lighthouse, which included a review of Lighthouse's records and financial statements.[13] The 2010 financial statements referenced the Pass Through Account.[14] Parker sent DeHaan an e-mail, which read: "I re-checked the

---

[8]     Compl. ¶ 41.

[9]     Compl. ¶ 17.

[10]    Compl. ¶ 32.

[11]    Compl. ¶ 36.

[12]    Compl., Ex. 2.

[13]    Compl. ¶¶ 43-45.

[14]    Compl. ¶ 46.

Georgia custody rule. You can receive checks made payable to 'third parties,' but not checks made payable to you. If you receive checks payable to Lighthouse, you still do not have custody if you return them within 3 business days. *You should return the check ASAP and get a replacement payable to [Interactive Brokers].*"[15]

Another mock audit took place in August of 2011.[16] To assist, Parker hired Em Walker, a former staff attorney for the Georgia Securities Commission.[17] When Walker visited the Lighthouse office on September 1, 2011, DeHaan was unable to produce most of the documents that he had been asked for in advance, including bank statements and client account statements.[18] Walker recommended that Page Perry investigate whether Lighthouse's clients were receiving periodic statements from the custodians Interactive Brokers and TD Ameritrade.[19] Parker wrote to Interactive Brokers and asked for assurances that Interactive Brokers was sending quarterly account statements to Lighthouse's clients.[20] On October 4, 2011, Parker met with

---

[15]     Compl., Ex. 10 (emphasis added).

[16]     Compl. ¶ 53.

[17]     Compl. ¶ 53.

[18]     Compl. ¶ 55.

[19]     Compl. ¶ 58.

[20]     Compl. ¶ 60.

DeHaan and informed DeHaan that Lighthouse was not in compliance with custody requirements because Interactive Brokers had not been providing account statements to Lighthouse's clients.[21] On November 18, 2011, Page Perry issued its mock audit report which stated that "[c]lient transaction records were not available at time of audit."[22]

On December 14, 2011, Lighthouse received notice that the Georgia Securities Commissioner planned to audit Lighthouse's records. The Commissioner's office asked to see the client account statements from Interactive Brokers or TD Ameritrade. On February 23, 2012, Lighthouse asked Parker for assistance. Parker drafted an e-mail that Lighthouse sent to the auditor. This e-mail indicated that "DeHaan had been unable to obtain the client statements because TD Ameritrade had provided Lighthouse with the wrong phone numbers."[23] Additionally, Parker instructed DeHaan to close the Pass Through Account and have it audited by April of 2012.[24] Then, on March 30, 2012, the SEC issued a subpoena to DeHaan. DeHaan appeared before the SEC on April 3, 2012, and he was represented by two Page Perry partners, the

---

[21]    Compl. ¶ 61, Ex. 16.

[22]    Compl. ¶ 63.

[23]    Compl. ¶ 80.

[24]    Compl., Ex. 29.

Defendants Robert D. Terry and Daniel I. MacIntyre. On June 14, 2012, Page Perry withdrew as counsel for Lighthouse.[25] With DeHaan's consent, Page Perry then reported his criminal activity to the SEC.[26]

The SEC filed a civil enforcement action against Lighthouse and DeHaan.[27] Lighthouse's assets were frozen, and the Plaintiff S. Gregory Hays was appointed as Receiver for Lighthouse. The Plaintiff filed this lawsuit, arguing that the Defendants knew, or should have known, that Lighthouse had custody of its clients' funds and that DeHaan was converting those funds for personal use. The Plaintiff further argues that the Defendants should have notified regulatory authorities of these violations, and that such notification could have mitigated the ensuing damage. The Plaintiff asserted claims for professional malpractice, breach of fiduciary duty, and breach of contract.[28] On June 10, 2014, the Court dismissed the Plaintiff's claims.[29] The Plaintiff now moves for reconsideration.

---

[25]     Compl. ¶ 93.

[26]     Compl. ¶ 94.

[27]     Compl. ¶ 27.

[28]     The Plaintiff seeks to hold Alan R. Perry, Jr. and the Estate of J. Boyd Page liable on a theory of supervisory liability.

[29]     [Doc. 27].

Remarkably, in the briefing on the Motion for Reconsideration, the Plaintiff now argues that Page Perry had "knowledge of DeHaan's theft and assisted in and perpetuated his criminal conduct."[30] In this regard, the Plaintiff's Motion for Reconsideration goes one step further in reliance upon what the Court characterized in its initial Order as "wild exaggerations, implausible inferences and selective quotations from e-mails ...."  The Complaint does not even allege that Page Perry had actual knowledge of DeHaan's ongoing theft of client funds until the very end of the attorney-client relationship. This new claim of actual knowledge of the theft of client funds during the ongoing attorney-client relationship is totally contradicted by the 168 pages of exhibits attached to the Plaintiff's Complaint.

---

[30]     Mot. for Reconsideration, at 3.

## II. Legal Standard

Local Rule 7.2 provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary."[31] A party may move for reconsideration only when one of the following has occurred: "an intervening change in controlling law, the availability of new evidence, [or] the need to correct clear error or prevent manifest injustice."[32] Further, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind."[33]

---

[31]   L.R. 7.2E.

[32]   Godby v. Electrolux Corp., No. 1:93-CV-0353-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994).

[33]   Brogdon v. National Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); see also Godby, 1994 WL 470220, at *1 ("A motion for reconsideration should not be used to reiterate arguments that have previously been made ... '[It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court [has] already thought through-rightly or wrongly.'") (quoting Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va.1983)) (alterations in original); In re Hollowell, 242 B.R. 541, 542-43 (Bankr. N.D. Ga 1999) ("Motions for reconsideration should not be used to relitigate issues already decided or as a substitute for appeal ... Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued.").

## III. Discussion

The Plaintiff argues that the Court erred in dismissing his claim for legal malpractice. For a legal malpractice claim, "the plaintiff must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff."[34] Additionally, "the element of breach of duty in a legal malpractice case  – the failure to exercise ordinary care, skill, and diligence – must relate directly to the duty of the attorney, that is, the duty to perform *the task for which he* was *employed*."[35] And the question of "[w]hat duty a defendant owes to a plaintiff is a question of legal policy to be decided as an issue of law."[36] The Plaintiff argues that the Defendants committed malpractice in three ways: (1) by failing to report Lighthouse's regulatory noncompliance and DeHaan's criminal activity to outside authorities, (2) by conducting an inadequate mock audit, and (3) by representing DeHaan before the SEC. The Court will discuss each in turn.

---

[34]     Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C., 265 Ga. 374, 375 (1995) (internal quotation marks omitted).

[35]     Tante v. Herring, 264 Ga. 694, 695 (1994) (emphasis added).

[36]     National Foundation Co. v. Post, Buckley, Schuh & Jernigan, Inc., 219 Ga. App. 431, 433 (1995).

## A. Failure to "Report Out"

The Plaintiff argues that the Defendants knew, or should have known, that Lighthouse was impermissibly in custody of client funds. The Plaintiff claims that the Defendants were duty-bound to report these violations to a regulatory agency. If they had done so, the argument goes, DeHaan's theft could have been limited. In the initial Order, the Court dismissed this claim because the Plaintiff had failed to establish the existence of the legal duty that the Defendants allegedly breached. As noted, under Georgia law, attorneys have a duty to exercise appropriate care and skill in performing the *specific services* for which they are employed.[37] Here, the Defendants were hired to perform an *advisory* role. In arguing that the Defendants should have reported Lighthouse's regulatory noncompliance or DeHaan's misconduct, the Plaintiff is not claiming that the Defendants were negligent in providing legal advice. He is arguing, rather, that the Defendants had a separate obligation independent of the service that they agreed to perform. Yet the Plaintiff does not cite to a single Georgia statute or state court case – not one – imposing such a duty on attorneys. Nevertheless, the Plaintiff argues that the Court committed "clear error of law" in dismissing his claim. First, the Plaintiff argues that the duty may be found in multiple provisions of the Georgia Rules of Professional Conduct ("GRPC"). Second, the Plaintiff – responding

---

[37]     See <u>Tante</u>, 264 Ga. at 694-95.

to the public policy discussion in the Court's initial Order – argues that the asserted "reporting out" duty does not require attorneys to violate their duty of confidentiality.

## 1. Georgia Rules of Professional Conduct

To establish a "reporting out" duty, the Plaintiff refers to several provisions of the Georgia Bar Rules. In rejecting this argument, the Court first noted that although "the Code of Professional Responsibility provides specific sanctions for the professional misconduct of the attorneys whom it regulates, it does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof."[38] In <u>Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.</u>,[39] the Georgia Supreme Court reiterated that "an alleged violation of the Code of Professional Responsibility . . . or the Standards of Conduct . . . standing alone, cannot serve as a legal basis for a legal malpractice action."[40] The Georgia Supreme Court clarified that the Bar Rules may be relevant, if at all, to "the *standard of care* in a legal malpractice action."[41]

---

[38]    <u>Davis v. Findley</u>, 262 Ga. 612, 613 (1992).

[39]    265 Ga. 374 (1995).

[40]    <u>Id.</u> at 374 (internal quotation marks omitted).

[41]    <u>Id.</u> at 376 (emphasis added).

In response, the Plaintiff argues that the "Bar Rules are evidence of the standard of care" and that the "Defendants' failure under these circumstances to comply with Bar Rules 1.13, [etc.] . . . fell below the minimum standard of care for securities compliance counsel." But for the Bar Rules to be relevant evidence, they must speak to the standard of care for the particular duty at issue.[42] This is why the Georgia Supreme Court stated that not "all of the Bar Rules [will] necessarily be relevant in every legal malpractice action."[43] Here, none of the Bar Rules cited by the Plaintiff speak to the level of skill and care required when advising a company over its regulatory compliance. They are simply general ethical guidelines. In fact, Justice Benham of the Georgia Supreme Court – in his concurring opinion in <u>Allen</u> – expressed concern that parties may improperly use the Bar Rules in precisely this manner: to convert ethical rules into legal duties.[44] He noted: "Although the main opinion might contemplate that the Code of Professional Responsibility will make a cameo appearance in malpractice cases, I fear that experience will show that it will play a *leading role* and the cast of horrors that will attend the allowance of such

---

[42]   <u>See</u> <u>Allen</u>, 265 Ga. at 376.

[43]   <u>Id.</u> at 377.

[44]   <u>See</u> <u>id.</u> at 378 (Benham, J., concurring).

evidence will be legion."[45] The Plaintiff's litigation strategy exemplifies this concern. In lieu of citing to any binding law, the Plaintiff has instead strung together multiple ethical rules in the hopes of creating a legal duty where one did not previously exist. Accordingly, the Bar Rules cited by the Plaintiff do not salvage his malpractice claim.

But even putting that to one side, the Plaintiff's claim still fails. The Plaintiff primarily relies upon Bar Rule 1.13(b), which states:

> If a lawyer for an organization knows that an officer . . . is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law.[46]

Based on the Complaint and the attached exhibits, the Defendants fully complied with this rule.[47] The Defendants notified DeHaan – who was, at the time, the

---

[45]   Id. at 381 (Benham, J., concurring) (emphasis added).

[46]   Rule 1.13 Organization As Client, GEORGIA RULES OF PROFESSIONAL CONDUCT (Jan. 1, 2001), http://www.gabar.org/barrules/handbookdetail.cfm?what=rule&id=97.

[47]   Although the Plaintiff alleges otherwise in his Complaint, the attached exhibits expressly contradict these allegations. And "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin

highest authority at Lighthouse – that Lighthouse may not retain client funds. For example, after the initial audit, Parker sent DeHaan an e-mail instructing him to return checks made payable to Lighthouse. In fact, the Plaintiff himself acknowledges that the Defendants advised DeHaan against maintaining custody of client funds.[48] DeHaan's theft was possible only because he ignored this advice. Thus, the Defendants certainly "referr[ed] the matter to . . . the highest authority that [could] act on behalf of" Lighthouse. In arguing otherwise, the Plaintiff makes a litany of arguments that lack merit.

First, the Plaintiff points out that Rule 1.13(b) – in its introductory sentence – states that "lawyer[s] shall proceed as is reasonably necessary in the best interest of the organization." The Plaintiff argues that, because notifying a regulatory agency would have been in Lighthouse's "best interest," the Defendants were obligated to do so. But the clause quoted by the Plaintiff – which is vague in isolation – is given meaning by the specific provisions that follow it. As noted, Rule 1.13(b) indicates that an attorney may be obligated to refer the matter to a higher authority within an organization. By contrast, Rule 1.13(c) states that notifying an external agency is

---

Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007).

[48]     See, e.g., Pl.'s Br. in Resp. to Page Perry, Parker, and Terry's Motion to Dismiss, at 33-34 ("Parker . . . advised [DeHaan] that he should not accept checks payable to Lighthouse.").

permissive, but not mandatory: "if . . . the highest authority that can act on behalf of the organization . . . fails to address . . . an action . . . that is clearly a violation of law, and . . . the lawyer reasonably believes that the violation is reasonably certain to result in substantial injury to the organization, then the lawyer *may* reveal information relating to the representation . . . ."[49] That the drafters used the word "shall" in Rule 1.13(b), but not in Rule 1.13(c), suggests that only the former is compulsory.

Second, the Plaintiff argues that the Defendants should have notified Anatoly Melamud, who "held an indirect interest in Lighthouse, incident to which he was actively involved in the activity of Lighthouse."[50] There is no support for this assertion. The Plaintiff acknowledges that DeHaan was the highest authority within Lighthouse, not Melamud. Third, the Plaintiff renews his argument that the "highest authority" that could act on behalf of Lighthouse was the Securities and Exchange Commission because it had the power to "seize [Lighthouse's] assets, and ultimately have a receiver appointed to take over and liquidate the firm."[51] This argument fails. That the Receiver may now act on behalf of Lighthouse is immaterial. The Receiver

---

[49]     Rule 1.13 Organization As Client, GEORGIA RULES OF PROFESSIONAL CONDUCT (Jan. 1, 2001), http://www.gabar.org/barrules/handbookdetail.cfm?what=rule&id=97.

[50]     Mot. for Reconsideration, at 13.

[51]     Mot. for Reconsideration, at 15.

did not have such authority when there was an attorney-client relationship between the Defendants and Lighthouse. Accordingly, based upon the Complaint and the attached exhibits, the Defendants did not violate Bar Rule 1.13.

The Plaintiff also argues, for the first time, that the Defendants violated Rules 4.1 and 1.2(d) as well.[52] But "[a] motion for reconsideration cannot . . . include[] new arguments that were previously available, but not pressed."[53] In his original Response Brief, the Plaintiff cited Rules 4.1 and 1.2 in only two sentences, and simply argued that they "must be read in conjunction with Rule 1.13."[54] Thus, the Plaintiff may not pursue this argument here.

### 2. Attorney-Client Confidentiality

In its initial Order, the Court explained how the duty asserted by the Plaintiff – which would require an attorney to divulge confidential information in the name of protecting the client – would have dire consequences for the attorney-client relationship. Under the Plaintiff's proffered duty, the risk of civil penalties would cause attorneys, out of self-preservation, to err on the side of disclosure when in doubt. Consequently, such a rule could even deter potential clients from seeking

---

[52]    Mot. for Reconsideration, at 16-21.

[53]    Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009).

[54]    Pl.'s Br. in Resp. to Page Perry, Parker, and Terry's Motion to Dismiss, at 43.

advice from a lawyer. The Plaintiff responds with two arguments. Before addressing them, the Court notes that even if the Plaintiff's arguments had merit, it would not change the disposition of this case. The Plaintiff's claim was dismissed because the asserted duty does not exist as a matter of law, not just because it raises public policy concerns.

First, the Plaintiff argues that the Defendants would not have violated their duty of confidentiality by reporting DeHaan because DeHaan was not their client; Lighthouse was. But this argument incorrectly assumes that the Defendants could have reported DeHaan without reporting Lighthouse. The Complaint makes clear that DeHaan's theft was made possible due to Lighthouse's noncompliance with custody regulations. Indeed, the SEC ultimately brought an action against both DeHaan and Lighthouse, and even referred to Lighthouse as DeHaan's "alter ego."[55]

The Plaintiff then argues that there are no confidentiality issues due to the crime-fraud exception to the attorney-client privilege. This is absurd. The Plaintiff claims that, because the Defendants' services allegedly facilitated DeHaan's fraudulent activity, the information acquired by the Defendants was not confidential. The Plaintiff conflates attorney-client confidentiality with the attorney-client

---

[55]    Complaint at 1, <u>Securities And Exchange Commission v. Dehaan</u> et al., No. 12-CV-1996 (N.D. Ga. June 9, 2012).

*evidentiary* privilege.[56] The attorney-client privilege allows a party to prevent the discovery of certain pieces of evidence during a judicial proceeding.[57] If an exception is established – e.g., the crime-fraud exception – then the privilege becomes inapplicable.[58] Obviously, neither this privilege nor its exceptions are relevant here. That certain confidential information may be discoverable does not mean that attorneys may volunteer such information outside of a judicial proceeding, much less be required to do so under the threat of civil penalties.[59] They could be disbarred for disclosing confidential information. For these reasons, the Plaintiff's malpractice

---

[56]    See Tenet Healthcare Corp. v. Louisiana Forum Corp., 273 Ga. 206, 209 (2000) ("An attorney's ethical and contractual duty to maintain client secrets is distinguishable from the attorney-client privilege.").

[57]    See NationsBank, N.A. v. SouthTrust Bank of Georgia, N.A., 226 Ga. App. 888, 896 (1997) ("[T]he attorney-client privilege bars revelation, discovery, and testimony of a lawyer except when waived by the client or in very limited circumstances.").

[58]    See In re Fulton County Grand Jury Proceedings, 244 Ga. App. 380, 382 (2000) ("[T]he attorney-client privilege does not extend to communications which occur before perpetration of a fraud or commission of a crime and which relate thereto.").

[59]    "[I]f a court determines that particular information is not covered by the attorney-client privilege, it still may be covered by the lawyer's ethical duty of confidentiality." Confidentiality, Privilege: A Basic Value in Two Different Applications, CENTER FOR PROFESSIONAL RESPONSIBILITY (May 2007), http://www.americanbar.org/content/ dam/aba/administrative/professional_responsibility/confidentiality_or_attorney.aut hcheckdam.pdf.

claim based upon the Defendants' failure to report DeHaan's and Lighthouse's violations was properly dismissed.

## B. Inadequate Audit and Conflict of Interest

The Plaintiff claims that the Defendants breached their duty to Lighthouse in two additional ways. First, the Plaintiff asserts that the Defendants performed inadequate mock audits. But to recover for legal malpractice, "the alleged negligence of the attorney must be the proximate cause of the damage to the client."[60] Here, as the Court noted in its initial Order, the Plaintiff has failed to state a causal link between the allegedly inadequate mock audits and Lighthouse's damages. To the contrary, the Complaint makes clear that neither Lighthouse's compliance issues nor DeHaan's theft was caused by inadequate legal advice. They were caused by DeHaan's deliberate choice to flout applicable regulations, lie to his attorneys, and continue his fraudulent scheme. In response, the Plaintiff argues that there is a causal link "because the financial records that Defendants failed to properly review and evaluate were the very documents that ultimately led to the discovery of the Ponzi scheme by the SEC."[61] But this still does not explain how a more thorough audit, in itself, would have stopped DeHaan's theft. To be sure, despite the allegedly inadequate audits, the

---

[60]      <u>Rogers v. Norvell</u>, 174 Ga. App. 453, 457 (1985).

[61]      Mot. for Reconsideration, at 23.

Defendants ultimately gave DeHaan correct legal advice – e.g., to return the checks that were made payable to Lighthouse – and DeHaan ignored it.

The Plaintiff also argues that the Defendants committed malpractice when they represented DeHaan before the SEC. In particular, the Plaintiff argues that this created a conflict of interest. But again, the Plaintiff does not state how the Defendants' representation of DeHaan – which occurred well after DeHaan began his fraudulent scheme – proximately caused any damages to Lighthouse.[62] In response, the Plaintiff points out that DeHaan continued to steal money after the Defendants represented him at the SEC hearing. However, it is rudimentary logic that simply because one event follows another in time does not mean that they are causally related. The Plaintiff again fails to explain how, but for the Defendants' representation of DeHaan before the SEC, Lighthouse would not have suffered additional harm. Even more, according to the Complaint, the Defendants ultimately reported DeHaan's criminal activity to the SEC shortly after the hearing.[63] Thus, the Plaintiff's legal malpractice claim was properly dismissed.

---

[62]     Cf. De La Maria v. Powell, Goldstein, Frazer & Murphy, 612 F. Supp. 1507, 1518-19 (N.D. Ga. 1985) ("With the exception of . . . two allegations, the plaintiff has failed to demonstrate how Mr. Gornall's alleged conflict of interest manifested itself to the detriment of . . . the plaintiff.").

[63]     Compl. ¶¶ 87, 94.

## IV. Conclusion

The Defendants were hired to provide legal advice which they did. Securities lawyers are not informants for the SEC. The Plaintiff's legal theory is profoundly flawed. The Plaintiff's Motion for Reconsideration [Doc. 30] is DENIED.

SO ORDERED, this 17 day of March, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge